# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Bobby Ray Curry, Jr., | Civ. No. 09-2104 (JRT/JJK) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Scott P. Fischer, | |
| Respondent. | |

Bobby Ray Curry, Jr., Inmate No. 11324-045, Federal Correctional Institution-Sandstone (B-Unit), P.O. Box 1000, Sandstone, MN 50072, Petitioner, *pro se*.

Michael A. Dees, Esq., Assistant United States Attorney, counsel for Respondent.

JEFFREY J. KEYES, United States Magistrate Judge

## INTRODUCTION

This matter is before the undersigned on Petitioner Bobby Ray Curry, Jr.'s, Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. 2241 by a Person in Federal Custody (the "Petition") (Doc. No. 1, Pet.). This matter has been referred to this Court for a Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, this Court recommends that the Petition be denied and this action be dismissed with prejudice.

## BACKGROUND

Petitioner is a military prisoner currently serving his sentence in the

Federal Correctional Institution in Sandstone, Minnesota. In March 1994, he was convicted by a general court martial of attempted murder, assault consummated by a battery, attempted kidnapping, and burglary with intent to commit murder. The kidnapping charge was later dismissed and Petitioner's sentence was reduced from 35 to 30 years. As of August 2009, when the government filed its response to this habeas Petition, Petitioner had a projected release date of October 12, 2011, via expiration with good time release. (Doc No. 5, Decl. of Angela Buege ("Buege Decl.") ¶ 3.)

The Uniform Code of Military Justice provides that military prisoners may be transferred to the custody of the Bureau of Prisons ("BOP") as follows:

> Under such instructions as the Secretary [of Defense] may prescribe, a sentence of confinement adjudged by a court martial or other military tribunal . . . may be carried into execution by confinement in any place of confinement under the control of any of the armed forces or in any penal or correctional institution under the control of the United States[.]

10 U.S.C. § 858(a). According to this statute, a military prisoner may be confined in a federal civilian correctional institution. *See id.*; *see also Bates v. Wilkinson*, 267 F.2d 779, 780 (5th Cir. 1959) ("It has long been established that military prisoners may properly be confined in federal institutions[.]"). Persons confined in penal or correctional institutions not under the control of one of the armed forces are subject to the same conditions as persons confined or committed by the Courts of the United States. 10 U.S.C. § 858(a). However, the final

computation for all military sentences is provided by the records office of the United States Army Disciplinary Barracks, Forth Leavenworth, Kansas, and the BOP must accept the sentence computation provided by military authorities. United States Department of Justice, Federal Bureau of Prisons, Program Statement 5110.14, *Administration of Sentence for Military and Coast Guard Inmates* ¶ 9 (Jan. 7, 2000).

In this case, Petitioner contends that the way in which the military administers the final computation of a military prisoner's sentence, and specifically the timing of the military's communication of such prisoner's release date to the BOP, conflicts with the requirements of the Second Chance Act of 2007 ("SCA"). Pub. L. No. 110-199, 122 Stat. 657 (2008). The SCA requires that each inmate in the BOP's custody be individually considered for Residential Reentry placement in a Residential Reentry Center ("RRC") before final release from BOP custody. *See* 18 U.S.C. §§ 3621(b), 3624(c)(6)(B). The SCA also increased the maximum time a prisoner may spend in an RRC to twelve months. *See* 18 U.S.C. § 3624(c). Given this increased potential RRC placement, the BOP staff initiates the review for an inmate's RRC placement approximately seventeen to nineteen months before the inmate's projected release date. *See Miller v. Whitehead*, 527 F.3d 752, 756 (8th Cir. 2008) (noting that in response to the SCA, "the BOP issued guidance directing that inmates must now be reviewed

for pre-release RRC placements 17-19 months before their projected release dates") (quotations omitted).  The SCA sets the maximum amount of time that a prisoner can spend at an RRC (not more than twelve months), but it does not set any minimum amount of time that a prisoner must spend at such a facility.  *Cf. Heppner v. Roal*, Civ. No. 09-2926 (PAM/JJK), 2010 WL 1380141, at *1 (D. Minn. Mar. 31, 2010) ("The SCA does not identify a maximum amount of time that a prisoner *must* spend at a RRC.") (emphasis added).  Further, although the SCA makes an inmate potentially eligible for a maximum of twelve months of RRC placement, an RRC placement of greater than six months is only permitted in extraordinary circumstances when the warden of the prison obtains the written concurrence of the BOP's regional director.  *See* United States Department of Justice, Federal Bureau of Prisons, Program Statement 7310.04, *Community Corrections Center (CCC) Utilization and Transfer Procedure*, ¶ 9(a)(1) (Dec. 16, 1998) (indicating that "placement beyond 180 days [is] highly unusual, and only possible with extraordinary justification"); *see also Miller*, 527 F.3d at 757 n.4 (noting that the BOP's own policies state that placement in a pre-release facility is only possible with substantial justification).

In the case of the typical civilian prisoner the timeframe computation is relatively easy to make.  The BOP reviews the inmate's individual circumstances seventeen to nineteen months before the civilian prisoner's projected release

4

date and then the inmate is transferred to a RRC for a designated time period through the expiration of his or her sentence.  Treating Petitioner similar to its civilian prisoners, Respondent has represented to the Court that it will be making its individualized RRC placement review for Petitioner in the time period of "March-May 2010," which would be approximately seventeen to nineteen months before his projected October 2011 release date.  (Buege Decl. ¶ 9.)

In the case of military prisoners in BOP custody, however, these computations are more complicated.  As with civilian prisoners, the final release date for a military prisoner can change throughout his or her prison term as the prisoner earns and accumulates "extra good time," receiving three to five days of extra good time credit per month for work performance.  See 28 C.F.R. § 523.17(a), (n) (establishing procedures for earning extra good time and providing that a military or Coast Guard inmate may earn extra good time).  However, because the military is responsible for computing military sentences for prisoners in the BOP's custody, Petitioner asserts that each year the military updates the BOP on the new projected release date for the prisoner, taking into account the extra good time credits earned by the prisoner during the preceding twelve months.[1]  Thus, Petitioner asserts that in his situation, in February 2010

---

[1] Respondent does not contest Petitioner's explanation of how the military computes final release dates and communicates that information to the BOP.

the BOP would have received the military's yearly update and his projected release date would be readjusted to August 2011, assuming that Petitioner earned the maximum extra good time credits in the months before February 2010.  (Pet. 7.)  The military would then provide a final computation to the BOP one year before Petitioner's expected projected release date of August 2011 (i.e., in August 2010), but that computation would only take into account the extra good time earned before August 2010, and not the extra good time he may earn after July 2010.  (*Id.* at 8.)  Thus, Petitioner claims that he should have a final release date in May 2011, but the military's practice of sending its final computation sheets to the BOP only twelve months prior to military prisoners' projected release date will deprive him of the opportunity to spend the maximum allowable time in a RRC under the SCA.  (*See* Doc. No. 7, Pet'r's Reply to Resp't's Response to Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Pet'r's Reply") 2 ("The military's current practice will restrict the time petitioner might serve in a RRC.").)

Put another way, Petitioner asserts that because the BOP has the discretion to decide that Petitioner should be transferred to an RRC for the full twelve-month placement permitted under the SCA, but would not receive the military's final sentence computation until nine months before Petitioner's own predicted May 2011 release date, Petitioner would then not have the opportunity

to spend a full twelve months in an RRC. This assumes, of course, that the BOP will decide that twelve months was the appropriate pre-release RRC placement time. It also assumes that Petitioner will earn all the extra good time credit available to him through the end of his sentence. As a result of his concern that this series of events may occur, Petitioner "seeks a mandamus to compel military officials to provide military prisoners with their final computation sheet 18 months prior to their final release date which will include all the potential extra good time that could be earned during their final 18 months of incarceration." (Pet. 8.)

## DISCUSSION

**I.     The Court Lacks Habeas Jurisdiction over the Military.**

It is well established that the only proper respondent in a habeas corpus petition under Section 2241 is the custodian of the inmate. 28 U.S.C. §§ 2242, 2243; *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004); *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 494-95 (1973). For purposes of habeas petitions challenging present physical confinement, the immediate custodian and proper respondent is the warden of the facility where the inmate is confined. *Rumsfeld*, 542 U.S. at 435; *Green v. Fed. Bureau of Prisons*, No. Civ. 00-819 (JRT/JMM), 2002 WL 32619483, at *2 (D. Minn. Jan. 29, 2002).

As discussed above, the Petition in this case concerns the military's system of recomputing Petitioner's final release date and not providing a final

7

computation to the BOP until it may be too late for the Petitioner to receive a twelve-month placement in an RRC. Petitioner seeks a court order compelling the military to provide military prisoners' final sentence computations to the BOP eighteen months prior to release, including all potential extra good time that could be earned during those last eighteen months of incarceration. However, because the warden of the facility in which Petitioner is currently confined is the only proper respondent in this habeas action, and because no military official is Petitioner's immediate custodian, this Court lacks jurisdiction to issue a writ of habeas corpus or a writ of mandamus to compel the military to take the action Petitioner requests.

**II.     Petitioner is not Entitled to Mandamus Relief.**

Even if this Court had habeas jurisdiction over the military in this matter, Petitioner would not be entitled to the mandamus relief he seeks. Three elements must be satisfied before mandamus relief may issue: (1) a clear right of the petitioner to relief sought; (2) a plainly defined and peremptory duty on the respondent's part to do the action in question, and (3) no other adequate remedy is available. *Castillo v. Ridge*, 445 F.3d 1057, 1060-61 (8th Cir. 2006). A writ of mandamus remedy is a drastic one, to be invoked only in extraordinary circumstances. *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980); *Sands v. Colby*, 35 M.J. 620, 621 (A.C.M.R. 1992).

First, Petitioner presents no clear right to relief. His claim that he will not have the opportunity to spend the maximum statutorily allowable release time in an RRC is entirely speculative. There is no indication in the record that he will be eligible for the full twelve-month RRC placement. Indeed, an RRC placement of more than six months is extraordinary and can only be accomplished upon the warden's obtaining the written concurrence of the Regional Director of the BOP, and neither are clearly destined to occur in Petitioner's case. Second, Petitioner has not shown a plainly defined or peremptory duty on the part of the BOP or the military to place Petitioner in an RRC for any specific length of time. All that must be done under the SCA is that the BOP must make an individualized assessment of Petitioner's suitability for RRC placement, and Respondent has represented to the Court that this will be accomplished in March-May 2010. If the BOP decided that Petitioner should receive a six-month RRC placement, then, by Petitioner's calculations, there should be ample time after the military sends its final computation to the BOP for such a six-month placement to take place. Finally, Petitioner has not yet earned the extra good time credits that he projects in his own calculation of his final release date, rendering the basis for his allegations premature, at best. Because Petitioner has failed to satisfy the elements of a mandamus action, his request that the military be compelled to provide a

speculative final sentence computation to the BOP eighteen months before Petitioner's projected release date should be denied.

## RECOMMENDATON

Based on the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. The Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. 2241 by a Person in Federal Custody (Doc. No. 1), be **DENIED**; and

2. This action be **DISMISSED WITH PREJUDICE**.

Date: April 21, 2010

*s/ Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **May 5, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within fourteen days after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.